1    Daniel M. Hattis (SBN 232141)
     HATTIS LAW
2    P.O. Box 1645
     Bellevue, WA 98009
3    Telephone: (650) 980-1990
     Facsimile: (425) 412-7171
4    Email: dan@hattislaw.com

5    Jason Skaggs (SBN 202190)
     SKAGGS FAUCETTE LLP
6    430 Lytton Ave 2nd FL
     Palo Alto, CA 94301
7    Telephone: (650) 617-3226
     Email: jason@skaggsfaucette.com
8
     Tony J. Tanke (SBN 74054)
9    LAW OFFICES OF TONY J. TANKE
     2050 Lyndell Terrace, Suite 240
10   Davis, CA 95616
     Telephone: (530) 758-4530
11   Email: appeals@tankelaw.com
12   Attorneys for Plaintiff and the Proposed Class

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16   JOSEPH LOOMIS, individually and on          Case No. 3:17-cv-02110
     behalf of all others similarly situated,
17                                               **CLASS ACTION COMPLAINT**
     Plaintiff,
18                                               **DEMAND FOR JURY TRIAL**
     v.
19
     COMCAST CORPORATION; and
20   COMCAST CABLE
     COMMUNICATIONS, LLC,
21
     Defendants.
22

23

24

25

26

27

28

I.      INTRODUCTION AND SUMMARY ........................................................- 1 -

II.     PARTIES........................................................................................- 2 -

III.    JURISDICTION AND VENUE .........................................................- 2 -

IV.     COMMON FACTUAL ALLEGATIONS...........................................- 2 -

        A.   Background. ..........................................................................- 3 -

        B.   Comcast Sales Agents Mislead Customers into Believing that the Advertised and
             Promised "Sticker Price" is the Actual Price Except For Equipment Charges and
             Bona Fide Taxes and Government Fees, and Sales Agents Fail to Disclose the
             Broadcast TV Fee and the Regional Sports Fee...........................................- 5 -

        C.   Comcast's Advertising Misleads Customers into Believing That the Advertised and
             Promised "Sticker Price" is the Actual Price Except For Equipment Charges and
             Bona Fide Taxes and Government Fees, and Fails to Adequately Disclose the
             Broadcast TV Fee and the Regional Sports Fee. ......................................- 6 -

        D.   Comcast Fails to Disclose the Fees in Its Order Confirmation Emails....................- 9 -

        E.   Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or
             the Regional Sports Fee, and To the Contrary, Implies That All Additional Monthly
             Non-Equipment Fees Are Government-Related.  ....................................- 9 -

        F.   In the Minimum Term Agreement Document, Which Comcast Sometimes Emails To
             Customers, Comcast Hides and Disguises the Broadcast TV Fee and the Regional
             Sports Fee to Fool Its Customers into Believing They Are Imposed by the
             Government. ....................................................................................- 10 -

        G.   Comcast's Bills Either Fail to Disclose the Fees Altogether (the Short Version of the
             Bill), or Disclose the Fees in a Way To Make the Customer Falsely Believe That the
             Fees Are Imposed by the Government (the Long Version of the Bill). ...............- 11 -

        H.   Comcast Doubles Down on Its Deception By Lying to Inquiring or Complaining
             Customers By Telling Them That the Fees Are Government-Imposed Charges
             Outside of Comcast's Control.  .........................................................- 13 -

        I.   Comcast Utilizes the Fees as a Backdoor Way To Increase Its Service Prices In the
             Middle of "Guaranteed" Fixed-Rate Contracts, In Breach of Its Agreements With Its
             Customers.  .................................................................................- 14 -

        J.   Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead
             Consumers. ...................................................................................- 16 -

V.      PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS.............- 18 -

VI.     CLASS ACTION ALLEGATIONS .................................................- 25 -

VII.    COMCAST'S ARBITRATION CLAUSE IS UNENFORCEABLE AGAINST
        CALIFORNIA CUSTOMERS..........................................................- 29 -

VIII.   CHOICE OF LAW ........................................................................- 30 -

i

**CAUSES OF ACTION** ................................................................................................ **- 30 -**
COUNT I – Breach of Contract..........................................................................- 30 -
COUNT II – Breach of the Covenant of Good Faith and Fair Dealing ..............- 31 -
COUNT III – Unjust Enrichment .......................................................................- 33 -
COUNT IV – California Business and Professions Code § 17200 ("UCL")........- 33 -
COUNT V – California Business and Professions Code § 17500 ("FAL")..........- 34 -
COUNT VI – California Consumer Legal Remedies Act ("CLRA")....................- 35 -
COUNT VII – Injunctive Relief..........................................................................- 36 -
COUNT VIII – Declaratory Relief ......................................................................- 37 -

**PRAYER FOR RELIEF** ........................................................................................... **- 39 -**

**JURY DEMAND**........................................................................................................ **- 39 -**

Plaintiff, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## I.  INTRODUCTION AND SUMMARY

1.      This proposed class action is about a massive bait-and-switch scheme perpetrated by Comcast Corporation and Comcast Cable Communications, LLC (collectively, "Comcast") on its over two million California cable television customers, whereby Comcast falsely advertises its cable television service packages for much lower prices than it actually charges.

2.      Comcast's advertising, and its sales staff, mislead consumers into falsely believing that the advertised price for its service packages is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees.

3.      However, Comcast intentionally chooses to exclude from the advertised price of its service packages certain invented fees (the Broadcast TV Fee and the Regional Sports Fee or the "Fees"). Comcast *never* qualifies the lower price with an asterisk or other adjacent marker, and any disclosures which Comcast makes about the Fees are not only inadequate, but are themselves deceptive. Comcast designed its disclaimers regarding the Fees to mislead consumers into falsely believing the Fees are taxes or government charges over which Comcast has no control, rather than disclosing the truth that the Fees are discretionary disguised double-charges for the channels that Comcast has promised are *already included* in the lower advertised package price (e.g., ABC, CBS, NBC, FOX, and local sports channels).

4.      Comcast doubles down on this deception through its practice of lying to customers who ask or complain about the Fees, explicitly telling them that the Fees are taxes or government-imposed charges.

5.      Comcast perpetrates this scheme to hook and trap new customers into one-year or two-year contracts at "guaranteed" fixed rates with significant early termination penalties, with the intent of charging the customers more than promised via the deceptive and hidden Fees. Even worse, Comcast then repeatedly and systematically raises its prices *even higher* on these trapped customers via the backdoor method of repeatedly increasing the Fees in the middle of their contract despite having promised the customers a locked-in monthly rate.

6.     Comcast has increased the Fees by 800% since they were first introduced in 2014, and the Fees now add as much as $12 per month to customer cable bills, costing California consumers over $200 million per year.

7.     Plaintiff brings this lawsuit on behalf of himself and the proposed Class to put an end to Comcast's unlawful actions, and to recover the money they have lost or imminently will lose as a result of Comcast's contractual breaches and deceptive, unfair, and unlawful conduct alleged in this Complaint.

## II.     PARTIES

8.     Plaintiff Joseph Loomis ("Plaintiff") is an individual residing in Moss Beach, California.

9.     Defendant Comcast Corporation is a multinational, mass media company headquartered in Philadelphia, Pennsylvania, and incorporated in Pennsylvania. It is the largest broadcasting and cable company in the world by revenue, and it is the largest home television and Internet service provider in the United States.

10.     Defendant Comcast Cable Communications, LLC, according to Comcast Corporation's 2015 Form 10-K, is a "100% owned cable holding company subsidiary" of Comcast Corporation. Comcast Cable Communications, LLC is headquartered in Philadelphia, Pennsylvania, and incorporated in Delaware.

## III.     JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) as the amount in controversy exceeds $5,000,000 among the members of the proposed California Class, believed to number in the hundreds of thousands, who are entitled to damages in the form of a full refund of all of the Broadcast TV Fee and the Regional Sports Fee amounts charged to them by Comcast within the applicable statutes of limitations.

12.     This Court has personal jurisdiction over Comcast because it is authorized to do business and regularly conducts business in California, Comcast has marketed, sold and issued cable service plans in California including to Plaintiff, and Comcast has entered into contracts with California consumers and Plaintiff regarding their cable service plans. Comcast has

sufficient minimum contacts with this state to render the exercise of jurisdiction by this Court permissible.

13.     Venue is proper under 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.     COMMON FACTUAL ALLEGATIONS

### A.     Background.

14.     Comcast has over 2 million cable television subscribers in California out of its over 22.5 million cable television subscribers nationwide.

15.     Comcast typically sells its television service "bundled" in service packages with Internet and/or telephone service, under the XFINITY brand. Comcast markets its service packages with standardized, uniform marketing materials to consumers via mass mailings, television commercials, print advertisements, and online advertising. Consumers buy these service packages over the telephone, on Comcast's website, or in person at one of Comcast's local stores.

16.     Comcast advertises the service packages for a specified "sticker price." Comcast advertises broadcast television network programming such as ABC, NBC, CBS, and FOX as being part of the service packages. See **Exhibit A**, p. 1 ("TV: NBC, FOX, and more … Local channels like ABC, NBC, and FOX"); **Exhibit C**, p. 1 ("tons of channels … included at no additional cost").

17.     To attract customers who are concerned about ever-increasing cable prices, Comcast prominently advertises a flat "guaranteed" monthly sticker price for a one-year or two-year contract that contains stiff early termination penalties. See **Exhibit C** at p. 1 ("89.99 per month for 12 months with a 2-year term agreement"), Exhibit A, p.1 ("54.99 per month for 12 mo. with 1-year agreement."); **Exhibit A**, p. 2 ("Early termination fee applies."); **Exhibit B**, p. 2 ("$89.99/mo 2 year comcast agreement for residential services starting upon installation").

18.     Comcast's widespread marketing of promotional fixed-rate pricing for term contracts has induced millions of consumers to lock themselves into one-year or two-year service

plan contracts.

19.     Starting in January 2014, Comcast began perpetrating a scheme by which it excluded some of its programming charges (i.e., some of the amounts it paid to broadcast television networks like ABC, CBS, NBC and FOX) from its advertised sticker price. Comcast disguised these programming charges in the form of a mysteriously named "Broadcast TV Fee" that was designed to appear as – and was buried in the fine print together with – government-related charges. In January 2015, Comcast expanded this scheme by introducing the "Regional Sports Fee" in order to similarly disguise programming price increases for local sports channels (which, like the broadcast channels, were already promised as being included in the lower advertised "sticker price" for the channel package). Comcast charges the Broadcast TV Fee to *all* Comcast cable television subscribers. Comcast charges the Regional Sports Fee to Comcast cable subscribers with the Digital Starter Package or above.

20.     Comcast perpetrates this massive bait-and-switch massive scheme, which affects all of its over 2 million California subscribers, in order to increase demand for its services and to increase its profits. Comcast tricks customers into thinking they will pay the lower advertised "sticker price," rather than the significantly higher price they will actually be charged. The Fees now add as much as $12.00 per month to California customer bills, often accounting for more than 10% of the subscriber's total bill.

21.     On July 23, 2016, Comcast's Senior Vice President Tom Karinshak admitted to the Senate Subcommittee which is currently investigating the Fees that: (1) prior to January 1, 2014 the programming fees represented by the current Broadcast TV Fee and Regional Sports Fee had been *included* in the advertised and billed "sticker price"; and (2) starting in 2014 Comcast "decided" to exclude some video programming charges from the "sticker price" in the form of these new Fees and to instead now bill them as separate line items "***as opposed to simply raising our sticker price.***" See S. Hrg. 114-409, pp. 35, 54, emphasis added.[1]

---

[1] Senate Hearing on Customer Service and Billing Practices in the Cable and Satellite Industry, June 23, 2016, available at https://www.gpo.gov/fdsys/pkg/CHRG-114shrg21423/content-detail.html. See Comcast Senior Vice President Tom Karinshak's testimony at p. 35, excerpted below (emphasis added):

CLASS ACTION COMPLAINT
Case No. 3:17-cv-02110

22.     These Fees are essentially disguised double-charges to provide the very same broadcast channels and local sports channels already promised as included in the advertised and promised package price.

**B.      Comcast Sales Agents Mislead Customers into Believing that the Advertised and Promised "Sticker Price" is the Actual Price Except For Equipment Charges and Bona Fide Taxes and Government Fees, and Sales Agents Fail to Disclose the Broadcast TV Fee and the Regional Sports Fee.**

23.     Comcast sales agents - including telesales agents, online chat agents, and in-store sales staff - universally *do not disclose or mention the existence of the Broadcast TV Fee and the Regional Sports Fee to prospective customers*.

24.     When Comcast sales agents quote customers the total order price (including the base package price and equipment fees), the agents falsely say that the stated price is the total price "*plus taxes*" or "*plus taxes and fees*." Comcast agents do not state the amount of these additional "taxes" or "taxes and fees" that will be charged, and tell customers they are unable to determine or calculate these charges.

25.     It is telling that elsewhere, Comcast uses this phrase "taxes and fees" to specifically denote *only government-related fees and taxes*. The long version of the Comcast customer bill has a section titled "**Taxes and fees**," and under this section Comcast lists *only* government-related fees and taxes. See Plaintiff's customer bill at **Exhibit F**, p. 2. A reasonable consumer would assume that when Comcast sales agents quote them a price "plus taxes and fees," that phrase has the same common-sense meaning as utilized by Comcast on its own bill – i.e., government-related taxes and fees.[2]

---

**Senator McCaskill**:  Now, what I want to make sure I understand here is that this has been a decision, I believe by all of you—raise your hand if you did not—that you would take—OK, DISH did not. You did not put any RSN [Regional Sports Network] or broadcast surcharge fees in. OK. So DISH decided not to do this, but the rest of *you decided that you were going to take something that was in the basic programming fee for buying your service, and you were going to put it in another place on the bill and call it something else.* I would ask you, can you tell me why all of you decided—*isn't it true that all of these were previously in your video charges*?
**Mr. Karinshak**. *Yes, Senator.*

*Id.* at 35 (emphasis added).

[2] Notably, in response to the concern of the Senate Subcommittee that cable companies should

26.     Plaintiff Joseph Loomis received 5 different quotes from Comcast sales agents for service packages in the process of researching and signing up for Comcast service. In each and every case: (1) the Comcast sales agent did not disclose the Broadcast TV Fee and the Regional Sports Fee; and (2) the Comcast sales agent told Mr. Loomis that the only additional charges beyond the quoted price was "taxes." See ¶¶ 77-111 below.

27.     In the course of investigating this case, Plaintiff's counsel received dozens of complaints from upset Comcast customers who, like Plaintiff, were told by Comcast sales agents that the quoted price was the total cost "plus taxes" or "plus taxes and fees," and who were not informed by the sales agents of the existence of the Broadcast TV Fee and the Regional Sports Fee.

**C.     Comcast's Advertising Misleads Customers into Believing That the Advertised and Promised "Sticker Price" is the Actual Price Except For Equipment Charges and Bona Fide Taxes and Government Fees, and Fails to Adequately Disclose the Broadcast TV Fee and the Regional Sports Fee.**

28.     Paralleling the standard practice of its sales agents in failing to disclose the Broadcast TV Fee and the Regional Sports Fee, Comcast's advertising and online order process similarly and intentionally do not adequately disclose the Fees.

29.     Comcast's advertising and online order process quote a "sticker price" for the service package, and imply that the sticker price is the actual price except for equipment charges and bona fide taxes and government fees.

30.     Comcast *never* includes an asterisk or qualifier in its advertising next to the prominently displayed price for its service packages which would put the consumer on notice that the sticker price does not include additional programming charges which are hidden in the form of the automatically billed Fees. For example, see the web page advertisement for service packages available in Sacramento, California at **Exhibit A**, p. 1 (no asterisk next to the advertised

avoid putting the Broadcast TV Fee and the Regional Sports Fee in the same section as government fees and taxes, Comcast insisted that the "*Taxes, Surcharges, & Fees*" section of the bill was "dedicated to government-mandated taxes or regulatory fees. …*This is a clear distinction between those charges that are discretionary and those that are pursuant to taxes and regulatory assessments*." S. Hrg. 114-409 at p. 190 (July 23, 2016, emphasis added). Since then, Comcast has renamed the "Taxes, Surcharges, & Fees" section of the bill to simply "Taxes and fees."

price of $54.99 which purportedly includes "NBC, FOX and more"). For example, see the direct mail advertisement for service packages available in Sacramento, California at **Exhibit C**, p. 1 (no asterisk next to the advertised price of $89.99 with "tons of channels … included at no additional cost.").

31.     Just as Comcast's sales agents fail to disclose the Fees, Comcast in its online order process fails to list the Broadcast TV Fee and the Regional Sports Fee in the online order configurator or on the order submittal page. See **Exhibit B**, pp 1-2.

32.     On the "My Order Summary" of the online order process, there is a question mark next to the "Monthly Total" amount (which is calculated to include the package price plus specified equipment charges); when one hovers over the question mark, a text box appears stating:

> *This is the base monthly total of all recurring charges for the services you have selected*. It does not include *tax or one-time charges* (such as installation or Pay-Per-View fees) that may appear on individual bills.

See **Exhibit B**, p. 1, highlighted in red box, emphasis added.

33.     But the stated "base monthly total" does not include the Broadcast TV Fee and the Regional Sports Fee, which are in fact recurring double-charges for ABC, NBC, CBS, FOX and local sports channels which Comcast had already advertised and promised were *included* in the lower package price.

34.     Meanwhile, Comcast's advertising disclaimers, in the event they are seen by consumers[3], are themselves misleading. Comcast's advertising disclaimers are designed to falsely imply that the Fees are government-imposed charges. For example, in Comcast's ads, the Broadcast TV Fee and the Regional Sports Fee *are never defined*, are stated in the fine print to be part of "taxes and fees," and are grouped with "regulatory recovery fees":

> Equipment, installation, **taxes and fees, including** regulatory recovery fees, Broadcast TV Fee (up to $3.50/mo.), Regional Sports Fee (up to $1.00/mo.) and

---

[3] Comcast makes significant efforts to hide the disclaimers while still hoping to point to their existence to insulate itself for liability for its fraud. For example, in the advertising on its website, one can only view the disclaimer if one notices a small link titled "Pricing & Other Info" and hovers over or clicks on it (see **Exhibit A**, p.1). For example, in its direct mail advertising, the disclaimers are in tiny print on an entirely different page than the advertised offer itself (see **Exhibit C**).

other applicable charges extra, and subject to change during and after the promo.

Emphasis added.[4]

35. The wording of the disclaimer blurs the distinction between true taxes and phony fees. The likelihood of such a misimpression is increased by the fact that the first of the "taxes and fees" which is named is "regulatory recovery fees," which has the plain meaning of a fee charged as a pass-through of regulatory costs imposed by the government. Meanwhile, as described above, Comcast defines the phrase "**taxes and fees**" on its own customer bills as referring to *only government-related fees and taxes*. See Plaintiff Loomis' customer bill at **Exhibit F**, p. 2 and Comcast's statement to the Senate Subcommittee quoted at footnote 2 above.

36. Further, it is no accident that Comcast mentions discrete pass-through items like equipment and installation and bona fide government imposts such as taxes and regulatory recovery fees *before* Comcast discloses the two phony surcharges. In legal terminology, Comcast is taking advantage of the ancient legal habit of *noscitur a sociis*, judging a word by the company it keeps; a person will naturally assume that the strange new terms of "Broadcast TV Fee" and "Regional Sports Fee" must possess the same characteristics as the immediately preceding terms, e.g., discrete, pass-through, government-imposed.[5]

37. Meanwhile, the Senate Subcommittee is *currently* investigating Comcast for this very practice of deceptively grouping the Broadcast TV Fee and the Regional Sports Fee with legitimate taxes and government-related fees.[6]

---

[4] This text, which is standard across all of Comcast's advertising such that only the amount of the Fees varies, is taken from the disclaimers in the "Pricing & Other Info." dialog box at **Exhibit A**, p. 2, and the direct mail advertisement at **Exhibit C**, p. 2 (red box highlight added).

[5] "When several nouns or verbs or adjectives or adverbs — any words — are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar." Antonin Scalia & Bryan A. Garner, *Reading Law* p. 195 (2012).

[6] See Senate Hearing on Customer Service and Billing Practices in the Cable and Satellite Industry, S. Hrg. 114-409 (July 23, 2016), available at https://www.gpo.gov/fdsys/pkg/CHRG-114shrg21423/content-detail.html. On December 23, 2016, the Subcommittee sent a follow-up letter to Comcast requesting an additional briefing and information, stating: "At the hearing, we expressed our concern that Comcast and its competitors obscured the cost of programming by *categorizing some programming costs as fees, such as the 'Broadcast TV Surcharge' or 'Regional Sports Network Fee.' We found that cable and satellite providers group those fees on the bill alongside taxes and regulatory charges. Such placement is misleading in that it suggests*

**D.** **Comcast Fails to Disclose the Fees in Its Order Confirmation Emails.**

38. Once a consumer orders Comcast service, Comcast sometimes emails the consumer an order confirmation email. Although Plaintiff placed three separate orders for Comcast service (two of which were cancelled due to the pricing not matching what he had been quoted), he only received one order confirmation email.[7]

39. Comcast hides the additional Broadcast TV Fee and Regional Sports Fee surcharges in the "Taxes, Surcharges and Fees" section of the order confirmation email, which displays a single-line total with no breakdown. The Broadcast TV Fee and the Regional Sports Fee are not broken out or disclosed anywhere in the email. For example, in the sole order confirmation email received by Plaintiff, the "Taxes, Surcharges and Fees" section consists of a single $17.59 line item, $8.00 of which in fact is comprised of the hidden and undisclosed Broadcast TV Fee and Regional Sports Fee. See **Exhibit D** (red box highlight added).

**E.** **Comcast's Form Subscriber Agreement Does Not Mention the Broadcast TV Fee or the Regional Sports Fee, and To the Contrary, Implies That All Additional Monthly Non-Equipment Fees Are Government-Related.**

40. Comcast has a form subscriber agreement for its residential customers which it calls the Comcast Agreement for Residential Services (hereinafter "Subscriber Agreement"). See **Exhibit H**. Comcast does not mention the Broadcast TV Fee or the Regional Sports Fee anywhere in the Residential Services Agreement's twenty-three pages of small type.

41. Section 2(a) of the Subscriber Agreement, which concerns the "Charges, Fees, and Taxes You Must Pay," is a *tour de force* of ambiguity and misdirection, larded from top to bottom with references to government-imposed taxes, fees, and programs:

---

*to the subscriber that the government requires the cable or satellite provider to impose these charges.*" (Emphasis added; see letter at **Exhibit K**, also available at http://www.mccaskill.senate.gov/imo/media/doc/2016-12-23%20Portman%20and%20McCaskill%20letter%20to%20Comcast%20re%20billing%20practices.pdf.) While the letter focuses in particular on the misleading grouping of the Fees with taxes and regulatory fees in Comcast's bills and order confirmations, the Subcommittee's concerns logically apply equally to such grouping in Comcast's advertising.

[7] Plaintiff received an order confirmation email from Comcast for the order he placed with the salesperson at A Wireless on June 19, 2016 (which he later cancelled due to the price being much higher than the price he was promised), but Plaintiff did not receive an order confirmation for the order placed with Comcast chat agent "Eunice" on June 21, 2016, nor for the updated order placed with Comcast chat agent "Surinder" later that same day.

**Charges, Fees, and Taxes You Must Pay.** You agree to pay all charges associated with the Service(s), including, but not limited to, installation/service call charges, monthly service charges, XFINITY Equipment (as defined below) charges, measured and per-call charges, applicable federal, state, and local taxes and fees (however designated), regulatory recovery fees for municipal, state and federal government fees or assessments imposed on Comcast, permitted fees and cost recovery charges, or any programs in which Comcast participates, including, but not limited to, public, educational, and governmental access, universal service, telecom relay services for the visually/hearing impaired, rights-of-way access, and programs supporting the 911/E911 system and any fees or payment obligations imposed by governmental or quasi-governmental bodies for the sale, installation, use, or provision of the Service(s). YOU WILL BE RESPONSIBLE FOR PAYING ANY GOVERNMENT IMPOSED FEES AND TAXES THAT BECOME APPLICABLE RETROACTIVELY. We will provide you with notice and an effective date of any change in our prices or fees, unless the change in price is related to a change in governmental or quasi-governmental taxes, fees, or assessments, in which case we may elect not to provide notice except where required by applicable law.

Exhibit H, Section 2(a).

42.     A reasonable consumer would assume that consistent with Section 2(a) above, all monthly non-equipment fees charged by Comcast above the service package price (such as the Broadcast TV Fee and the Regional Sports Fee) must be part of this laundry list of "governmental or quasi-governmental taxes, fees, or assessments."

        F.     **In the Minimum Term Agreement Document, Which Comcast Sometimes Emails To Customers, Comcast Hides and Disguises the Broadcast TV Fee and the Regional Sports Fee to Fool Its Customers into Believing They Are Imposed by the Government.**

43.     Sometimes, when a customer signs up for a fixed-term Comcast contract, the customer is emailed a Minimum Term Agreement document which purportedly states the terms of the offer. The Minimum Term Agreement is also posted online in a hard-to-find section of the Comcast customer portal.[8]

44.     Comcast did not email to Plaintiff, and Plaintiff did not receive, a Minimum Term Agreement when he signed up for his service package. Mr. Loomis only learned of the

---

[8] As of April 11, 2017, in order to access this Offer document on the Comcast customer portal, the customer must: (1) click on the "My Account" link; (2) click on the "Settings" link; (3) click on the "Account, Contact Information, and Legal Terms" link; (4) click on the "Legal agreements" link in the "Legal Information" section; and finally (5) click on the "My Account Terms of Service" link, which will download the document as a PDF.

CLASS ACTION COMPLAINT
Case No. 3:17-cv-02110

document's existence three months into his contract when a Comcast "Executive Customer Relations" employee named "Mark," who was responding to Mr. Loomis' complaints about the surprise Fees, told Mr. Loomis about the document and Mr. Loomis asked Mark to mail it to him.

45.     In bold, boxed text at the top of the Minimum Term Agreement, Comcast prominently displays the guaranteed monthly price for the contract term, *with no asterisk or qualifier*. See **Exhibit G.**

46.     Comcast does not define the strange and unusual terms "Broadcast TV Fee" and "Regional Sports Fee" in the Minimum Term Agreement, and they are only mentioned in a single disclaimer sentence which groups them alongside "extra" taxes and regulatory charges:

> Equipment, installation, **taxes and fees, including** Broadcast TV Fee (currently up to $5.00/mo.), Regional Sports Fee (currently up to $3.00/mo.) and if XFINITY Digital Voice is included, regulatory recovery fees and other applicable charges (e.g. per-call or international charges) are extra, such charges and fees are subject to change during and after the term of this Agreement.

*Id.* (example of Minimum Term Agreement regarding Plaintiff's services, emphasis added).

47.     On information and belief, Comcast's intent is to fool its customers into believing the Broadcast TV Fee and the Regional Sports Fee are imposed by the government. As a result of Comcast's clever drafting and omissions, a reasonable consumer would interpret these cryptic terms "Broadcast TV Fee" and "Regional Sports Fee" as relating to government charges outside of Comcast's control, which therefore are "subject to change" only because they are like the other government taxes and fees in that same sentence, consistent with the "governmental or quasi-governmental taxes, fees, or assessments" referenced in Section 2(a) of the Subscriber Agreement. Meanwhile, as described above, Comcast defines the phrase "**taxes and fees**" on its customer bills as referring to *only government-related fees and taxes*. See Plaintiff Loomis' customer bill at **Exhibit F**, p. 2 and Comcast's statement to the Senate Subcommittee quoted at footnote 2 above.

**G.     Comcast's Bills Either Fail to Disclose the Fees Altogether (the Short Version of the Bill), or Disclose the Fees in a Way To Make the Customer Falsely Believe That the Fees Are Imposed by the Government (the Long Version of the Bill).**

48.     Comcast has two versions of the customer bill (a short version, and a long

version), both of which fail to adequately disclose the Fees.

49. The short bill is the default view of the bill displayed to customers when they log into their Comcast account (including by clicking on an email link in a Comcast "Your bill is ready" email). The short version of the bill in effect in October 2016 made no mention of the Broadcast TV Fee or the Regional Sports Fee, and instead silently included these charges in the total amount displayed under "Other charges and credits."[9] See **Exhibit E**, p. 1. Recently, Comcast updated the short version of the bill to strip it down even further; now there is only a single line "Total balance due." See May 2017 short bill at **Exhibit E**, p. 2. Comcast provides a link adjacent to the short bill labeled "View Bill Details (PDF)" which downloads the long version of the bill as a PDF.

50. The long version of the bill includes the amounts charged for the Broadcast TV Fee and the Regional Sports Fee; however, Comcast deceptively discloses and defines the Fees in a way to make the customer falsely believe that the Fees are imposed by the government.

51. First, Comcast intentionally omits the amount of the Fees from the top-line "XFINITY bundle" price. See **Exhibit F**, pp. 1, 2. A reasonable consumer would believe that this "XFINITY bundle" price is the actual total price for the bundled services, including the broadcast television programming which is in every channel package offered by Comcast, and including the local sports programming which is in the package selected by Mr. Loomis. And in fact, prior to 2014, the top-line "XFINITY bundle price" *did* include all the programming charges. But since January 2014, Comcast has excluded some of its programming charges (i.e., some of the amounts it purportedly pays to broadcast television networks like ABC, CBS, NBC[10] and FOX, and to local sports channels) from the top-line bundle price and has hidden those charges in the form of the Broadcast TV Fee and the Regional Sports Fee in a separate section of the bill called "Other

_____

[9] The incomplete and misleading nature of the one-line summary of the "Other charges and credits" is further illustrated by this sample short bill where the displayed net charge of $2.50 is actually less than the hidden $5.00 charge for the Broadcast TV Fee that month (there was a simultaneous hidden one-time unrelated credit that month). *Id.*

[10] NBCUniversal is a wholly-owned subsidiary of Comcast Corporation. So presumably, a significant portion of the billions of dollars in revenues Comcast has collected in the form of the Broadcast TV Fee has essentially been paid to itself.

charges and credits."

52.     Although, in an effort to exculpate itself from liability for its fraud, Comcast does not list the Fees under the "Taxes and fees" section, Comcast nonetheless presents and defines the Fees in a way that suggests to the customer that they are government-imposed charges. Comcast defines the Broadcast TV Fee as follows: "The Broadcast TV Fee recovers a portion of the costs of retransmitting television broadcast signals." Comcast defines the Regional Sports Fee as follows: "Regional Sports Fee recovers a portion of the costs to transmit certain regional sports networks." *Id.*, p. 2.

53.     By using the technical phrase "recovers a portion of the cost of retransmitting television signals," Comcast falsely implies the Broadcast TV Fee is related to a government or FCC imposed cost on Comcast for signal transmission, instead of disclosing the truth that Comcast charges the fee to reimburse itself for its contractual payments for video programming from ABC, NBC, CBS, and FOX. Similarly, in describing the Regional Sports Fee with the technical phrase "recovers a portion of the costs to transmit certain regional sports networks," Comcast falsely implies the fee is to cover transmission fees imposed on Comcast by regional or local government, rather than disclosing the truth that Comcast charges the fee to reimburse itself for its contractual payments for video programming from local sports content providers.

54.     In an effort to avoid being caught charging more than it advertised and promised to its customers, Comcast deceptively excludes these programming charges from the top-line XFINITY bundle price, and instead disguises them in the below-the-line Broadcast TV Fees and Regional Sports Fees which Comcast implies are government-related charges (rather than disclosing the truth that they are discretionary programming double-charges).

**H.     Comcast Doubles Down on Its Deception By Lying to Inquiring or Complaining Customers By Telling Them That the Fees Are Government-Imposed Charges Outside of Comcast's Control.**

55.     When customers contact Comcast to ask or complain about the Fees, Comcast doubles down on its deception through its practice of lying to customers by saying that the Fees are taxes or government-imposed charges over which Comcast has no control.

56.     For example, when Plaintiff Loomis called Comcast customer service to complain about the surprise Fees, he was repeatedly told that the charges could not be removed, and that everyone must pay the Fees because they are "required by federal law."

57.     For example, other Comcast customers have posted on Comcast's official online "Help & Support Forums" that they were told by Comcast staff that the Broadcast TV Fee and the Regional Sports Fee are taxes or government fees:

> Posted on Comcast's Website on June 11, 2016:
> I called comcast today to complain about the extra [Broadcast TV Fee and Regional Sports Fee] charges that are added to the bill. I was told that it was a tax. IT IS NOT A TAX, it is a fee charged by Comcast. They are charging us an extra $8 per month, without giving us any additional services. I believe we have a class action lawsuit waiting to happen.[11]

> Posted on Comcast's Website on July 19, 2015:
> Upon review of my Comcast bills I called today, Sunday, to find out why I was being charged for a $3 Broadcast TV fee and a $1 Regional Sports Fee. These charges appeared in my June and July bills under the section "Other Charges & Credits" and I wanted to get a better understanding of what and why these charges appeared all of a sudden and if they can be removed. As an aside, I don't watch sports. The call center agent explained they were state and government taxes and could not be removed. I asked her why they didn't appear in the "Taxes, Surcharges, and Fees" section and she corrected herself and stated that they are not State fees but that they are government fees that Comcast had been approved to charge customers.[12]

58.     In the process of investigating this case, Plaintiff's counsel received complaints from dozens of Comcast customers who similarly contacted Comcast to complain about the Broadcast TV Fee and the Regional Sports Fee and were falsely told by Comcast that the Fees were taxes, FCC fees, or some other form of government-imposed charge.

**I.      Comcast Utilizes the Fees As a Backdoor Way To Increase Its Service Prices In the Middle of "Guaranteed" Fixed-Rate Contracts, In Breach of Its Agreements With Its Customers.**

59.     Comcast has induced millions of consumers to enter into one-year or two-year service contracts by promising them a "locked-in" and "guaranteed" promotional rate which will

---

[11] http://forums.xfinity.com/t5/Billing/Broadcast-TV-Fee/td-p/2671674
[12] http://forums.xfinity.com/t5/Billing/broadcast-tv-fee/td-p/2457405

CLASS ACTION COMPLAINT
Case No. 3:17-cv-02110

not increase during the term of the contract. Pursuant to their contracts with Comcast, the customers cannot terminate their minimum term service agreement without paying a significant "termination fee." For example, Plaintiff Loomis's purported contract specifies a $230.00 termination fee, which is slowly reduced over time. See **Exhibit G** at ¶ 5.

60.     However, in violation of its representations to and agreements with its customers, Comcast utilizes the Fees as a backdoor way to repeatedly raise its prices on these trapped customers during their contract term.

61.     For example, Comcast notified Mr. Loomis in his March 10, 2017 bill that Comcast will be increasing the Broadcast TV Fee from $5.00 to $7.00, and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 - approximately half-way into his two-year "guaranteed" fixed-rate contract.

62.     Meanwhile, Comcast preposterously insists that it is not breaching its agreements with its customers when it increases the Fees mid-contract because it claims the locked-in promotional price for their service package remains the same, and only the Fees, which are not subject to the lock-in, have increased.

63.     For example, three different Comcast agents told Mr. Loomis that in spite of his guaranteed-price agreement, Comcast could increase the Broadcast TV Fee and the Regional Sports Fee at any time during the contract term. (Meanwhile Mr. Loomis never agreed to be charged the Fees in the first place.)

64.     For example, Comcast posted the following response on its public message boards to a customer who asked why his service price had increased in the middle of his promised fixed-rate two-year agreement:

> Hello KMcGarvey,
> *You[r] 24 month agreement* will not increase, so your *package price will remain the same. However, you will notice an increase on your statement for the services/fees that are not included in your agreement.* After reviewing your account, it shows that the following factors of your monthly subscription will be effected:
> - **Broadcast TV Fee** will increase to $5.00
> - **Regional Sports Network Fee** will increase to $3.00

(Italics added, bold in original.)[13]

65.     These responses by Comcast are of course nonsensical because the Fees are just another way Comcast is charging for the same broadcast television and sports programming which it previously promised was *included* in the locked-in rate for the service package.

**J.     Comcast's Practices Are Fraudulent and Unfair and Are Intended To Mislead Consumers.**

66.     Comcast perpetrates this scheme in order to increase demand for its service packages and to increase its profits by advertising and promising a lower price for its service plans than it will actually charge. Comcast hooks and traps customers into one-year or two-year contracts, with the intent of charging them more than promised and then continuing to increase the service price in the middle of the promised fixed-rate term via the deceptive and inadequately disclosed Fees.

67.     In a statement to the Senate Subcommittee, the National Association of Telecommunications Officers and Advisors ("NATOA"), whose members represent Local Franchising Authorities ("LFAs") that are actively involved in monitoring and enforcing cable customer service standards, described the practices and conduct alleged in this Complaint as deceptive:

> One issue that has risen to the top of consumer complaints has to do with increases to basic service tier rates and fees… *Consumer bills also have been complicated by the addition of new, unexplained fees for programming that was already included in their subscription packages.* In 2016, many LFAs saw huge increases in the "broadcast TV" fee - from $1.50 to $4.50 - and "regional sports network" fee - from $1.00 to $3.00. *These fees are not only confusing to consumers, but misleading, as well.* Many subscribers choose specific programming bundles to lower their costs and they sign contracts to keep those costs in place. However, because these fees are outside the agreed upon bundle price, subscribers see their budget busted and locked into an agreement they cannot get out of. Many LFAs could have questioned and reviewed many of these increased fees and costs under their existing basic rate regulatory authority. Unfortunately, just over one year ago, the FCC adopted regulations that stripped local governments of much of our remaining authority to protect our local residents from unfair cable billing and customer service practices.

---

[13] See post dated December 16, 2015 on the Comcast online Help & Support Forum available at: http://forums.xfinity.com/t5/Customer-Service/Question-regarding-new-rates-effective-in-January/td-p/2658968

S. Hrg. 114-409, p. 183 (July 23, 2016), emphasis added.

68. Meanwhile, the FCC has identified these fees by "MVPDs" (Multichannel Video Programming Distributors, such as Comcast) as potentially deceptive, stating the following and seeking public comment:

> Some MVPDs have added various video-related fees to monthly billing statements. Such fees include, for instance, a broadcast fee to partially recoup retransmission consent fees charged by local broadcast stations and a sports fee to defray the cost of sports programming. *Some MVPDs may raise subscribers' total monthly bills using these fees without raising the advertised package prices.* We seek comment on the competitive strategy associated with adding video-related fees as opposed to raising monthly subscription prices… Do such fees enable MVPDs to better attract new subscribers and retain existing subscribers? Are consumers less responsive to a $1 video-related fee than they are to a $1 increase in the price of video services?

See FCC Public Notice, 30 FCC Rcd 7114, released on July 2, 2015, available at https://www.fcc.gov/ecfs/filing/60001090312, emphasis added.

69. Consumer advocates and journalists have criticized the Broadcast TV Fee and Regional Sports Fee scheme.

70. Consumerist.com, a website published by a subsidiary of Consumer Reports, upon first learning of Comcast's plan to impose a Broadcast TV Fee, stated: "[S]ince this is a fee tacked on above the bill, the company may still be able to advertise the monthly rate without the fee. So this is an attempt to jack up your bill without being transparent about the total costs to potential subscribers."[14] Consumerist's prediction was of course borne out.

71. One journalist called the Broadcast TV Fee "maddening because of the way it's being conducted… [B]y tacking on the additional cost below the bill's main charges, the company is able to jack up prices without having to advertise that anything has changed."[15]

72. Another journalist stated that Comcast's charging a Broadcast TV Fee is "like The Cheesecake Factory listing a piece of cheesecake for $5.99 then adding a $1.50 sugar surcharge

---

[14] Morran, Chris, "Comcast Wants To Be Hated Even More, Adding $1.50 'Broadcast TV Fee'", Consumerist, November 25, 2013, available at https://consumerist.com/2013/11/25/comcast-wants-to-be-hated-even-more-adding-1-50-broadcast-tv-fee/.

[15] Duryee, Tricia, "Why Comcast Just Added a $1.50 'Broadcast TV Fee' to Your Monthly Bill", Geekwire, July 23, 2014, available at http://www.geekwire.com/2014/comcast-just-added-1-50-broadcast-tv-fee-bill.

when you get your bill."[16]

73.     Comcast's false promises, misrepresentations, and failure to adequately disclose the Broadcast TV Fee and the Regional Sports Fee are material to reasonable consumers, and are unfair and done in bad faith.

74.     Comcast's misrepresentations and practices injured and caused Plaintiff and Class members to lose money or property in that they paid more for their Comcast service packages than they were promised and otherwise should have paid.

75.     Comcast will continue deceiving and cheating its customers with its Broadcast TV Fee and Regional Sports Fee scheme until it is forced by law to stop. The scheme is far too profitable. Plaintiffs estimate that Comcast earns approximately $2 billion per year from these hidden fees – *over $200 million annually from its California customers alone*.

## V.     PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

76.     On August 15, 2015, Plaintiff Joseph Loomis entered into a one-year fixed price contract with Comcast to provide broadband Internet to his Moss Beach, California home for $39.99 per month. Up until May 19, 2016, the monthly charge remained $39.99 per month. However on May 19, 2016 Comcast began charging Mr. Loomis an additional $4.99 for a Service Protection Plan which he did not order. Mr. Loomis contacted Comcast and an agent told him she would reverse the charge.

77.     On June 19, 2016, Mr. Loomis went to the "A Wireless" store in Burlingame, California, an authorized Verizon Wireless retailer, regarding his Verizon wireless service. A salesperson at the store said they could offer him a special deal on a Comcast package because he was a Verizon customer. The salesperson promised Mr. Loomis he could upgrade his existing Comcast Internet service (whose contract would be expiring soon) to Preferred XF Double Play (Internet plus television) for $65.00 per month plus tax guaranteed for 24 months and with the installation fee waived, plus a DVR for an additional $9.95 per month. Based on this promise, Mr.

---

[16] Kline, Daniel, "The Truth Behind Comcast's $1.50 Retransmission Fee", The Motley Fool, July 25, 2014, available at http://www.fool.com/investing/general/2014/07/25/the-truth-behind-comcasts-150-retransmission-fee.aspx.

CLASS ACTION COMPLAINT
Case No. 3:17-cv-02110

Loomis placed the order for the Comcast service package. The salesperson gave him a form summary of the transaction, which did not reflect what he had promised Mr. Loomis. At Mr. Loomis' request the salesperson made some hand written notations on the form agreement to reflect the terms he had promised, including crossing out the price of $99.99 and the HD Technology Fee of $10.00, and writing on the receipt "$65 plus tax." The salesperson never mentioned the existence of the Broadcast TV Fee or the Regional Sports Fee, and the form summary made no reference to the Fees.

78.     Later that day, Mr. Loomis received a "service changes" confirmation email from Comcast regarding the order he had placed via the A Wireless agent. See **Exhibit D**, red highlight added. The order confirmation did not reflect what he had been promised, and showed a much higher monthly charge, installation charges, an additional monthly HD Technology Fee, and $17.59 of unspecified "Taxes, Surcharges and Fees." The order confirmation did not mention the Broadcast TV Fee or Regional Sports Fee.

79.     The next day on June 20, 2016, Mr. Loomis went to Comcast's website and initiated a web chat with a Comcast agent to determine the reason for the pricing discrepancy and to correct his order to reflect what he had been promised. Mr. Loomis engaged in a web chat because he wanted to be able to document, in the form of saved chat logs, further conversations with and promises by Comcast regarding service package pricing.

80.     The sales chat agent transferred Mr. Loomis to a billing chat agent. The billing chat agent, "Nikko," told Mr. Loomis that Comcast could not honor the price and contract given to him by the A Wireless salesperson.

81.     Nikko then offered to cancel Mr. Loomis' current order, and to replace it with a new one. The agent offered a new service package for $59.99 plus "taxes and fees."

82.     Mr. Loomis asked Nikko, "What would be the fees?"

83.     Nikko responded, "Fees will include your modem rental, dvr rental and alike."

84.     At no point did Nikko mention the existence of the Broadcast TV Fee or the Regional Sports Fee.

85.     Mr. Loomis told Nikko that for now, he wanted to cancel the order placed by the A

Wireless salesperson, and to take some more time to consider his options.

86.     Nikko again urged him to sign up for the $59.99 package, telling him, "So it will be 59.99 + one time shipping + taxes (since you have your own modem."

87.     Mr. Loomis declined.

88.     Mr. Loomis then asked Nikko to check his existing Comcast account and confirm the Service Protection Plan charge had in fact been reversed as promised by a previous customer service agent. Nikko indicated the charge had not been cancelled, promised to reverse the charges, and told Mr. Loomis he would no longer be charged for the Service Protection Plan.

89.     The next day on June 21, 2016, Mr. Loomis initiated another web chat on the Comcast website to upgrade his service plan.

90.     This time Mr. Loomis chatted with a sales agent named "Eunice."

91.     Eunice offered Mr. Loomis a Starter Double play bundle deal at $79.99 per month for 24 months, with a DVR rental for $10.00 per month, no HD Technology Fee, and no other charges except taxes.

92.     Eunice made no mention of the existence of the Broadcast TV Fee or the Regional Sports Fee.

93.     Relying on the chat agent's representations, Mr. Loomis accepted the offer and told Eunice to place the order.

94.     Eunice told Mr. Loomis that he would shortly receive an email order confirmation for the transaction. At the end of the chat, Mr. Loomis completed a chat survey, expecting to be able to email the chat transcript to himself at the end of the chat survey. But at the end of the survey there was no way for him to email the chat transcript to himself or to access the transcript.

95.     Concerned that he had no documentation of the agreement made and order placed in the chat with Eunice, Mr. Loomis immediately initiated another web chat on Comcast's website to attempt to get a copy of the chat transcript.

96.     This time Mr. Loomis spoke with a chat agent named "Linda."

97.     Mr. Loomis asked Linda how he could obtain the chat transcript of the conversation with Eunice.

98.     Linda told Mr. Loomis she could only give Mr. Loomis the chat ID number, but that she could not send him a copy of the chat, and that even she was unable to view the contents of the chat.

99.     Linda told Mr. Loomis that although she could not access or email him the prior chat, she could describe the order that was placed. Linda also told Mr. Loomis that he would receive an email order confirmation of the order placed with Eunice within 24 hours.

100.    Mr. Loomis told Linda, "What I need is what Eunice said the package would include, including pricing, in case there is a discrepancy between what is provided and what she said."

101.    After going over the submitted order with Linda, Mr. Loomis determined that he was going to be charged more in months 13-24 than what Eunice had promised him. Mr. Loomis was going to be charged $79.99 plus $10.00 (not $0.00) for the monthly HD Technology Fee for all 24 months, and was going to be charged $0.00 (not $10.00) for the DVR for the first 12 months but then would be charged an additional $19.99 for the DVR for months 13-24.

102.    Linda told Mr. Loomis that "the order has already been processed and I am unable to make any changes."

103.    Linda then offered to transfer Mr. Loomis to a sales chat agent to see if the sales agent could reduce the price.

104.    Linda transferred Mr. Loomis to a sales chat agent named "Surinder."

105.    Surinder offered Mr. Loomis a fixed $79.99 monthly fee for all 24 months, and to waive the $9.95 DVR fee and the $10.00 HD Technology Fee for the first 12 months. Mr. Loomis calculated that this would result in the same total price paid at the end of 24 months as he had been previously promised by Eunice.

106.    Surinder made no mention of the existence of the Broadcast TV Fee or the Regional Sports Fee.

107.    Surinder told Mr. Loomis, "With the changes, the new monthly bill would be $79.99/mo + taxes for the next 12 months."

108.    Relying on Surinder's representations, Mr. Loomis accepted the offer and told

Surinder to place the order. Surinder told Mr. Loomis that he would "receive an email confirmation within the next 2 hours with all the information."

109. Mr. Loomis never received an email order confirmation for the order placed with Surinder, just as he never received an email order confirmation for the prior order placed with Eunice.

110. Mr. Loomis also did not receive a copy of a Minimum Term Agreement or the Comcast Subscriber Agreement at that time.

111. The new service contract (i.e. the contract agreed to with Surinder which was documented in the chat transcript saved by Mr. Loomis) started June 25, 2016.

112. The first bill Mr. Loomis received from Comcast under the new contract was dated July 10, 2016. Mr. Loomis did not fully understand the July 10 bill due to the *twenty* different pro-rated credits and charges in the "Other charges and credits" section, such that it was unclear to him the items for which he was being charged versus the items for which there were offsetting credits.

113. The second bill Mr. Loomis received under the new contract was dated August 10, 2016. In this bill, the only line items listed in the "Other charges and credits" section were charges for the Broadcast TV Fee and the Regional Sports Fee for a total of $8.00, this time with no offsetting credits.

114. Mr. Loomis was upset about being charged this mysterious Broadcast TV Fee and Regional Sports Fee, which had not been previously disclosed to him and which caused his bill to be $8.00 higher than promised.

115. Mr. Loomis called Comcast customer service several times to complain about the Fees and spoke with several Comcast agents. Comcast agents falsely told him that the Fees were "required by federal law" and were "taxes."

116. When the agents told him that they could not remove the Fees from his bill and that everyone with television service had to pay them, Mr. Loomis requested that the agents simply reduce his base package price by $8.00 per month to offset the amount of the Fees, to honor his promised price. The agents refused to reduce his base package price to offset the Fees,

telling Mr. Loomis they were unable to do so and that their hands were tied.

117. On August 16, 2016, Mr. Loomis drafted a letter on his Attorney at Law letterhead in which he documented his experience, enclosed a copy of his chat session with Surinder containing the terms of his agreement, and demanded that Comcast remove the $8.00 in Fees from his monthly bills, or, alternatively, reduce his monthly bill by $8.00 to offset the amount of the Fees in order to comply with the agreed upon contractual terms. Mr. Loomis mailed the letter to three different Comcast addresses including Comcast's corporate headquarters in Philadelphia, Pennsylvania.

118. On September 12, 2016, in response to his letters, Mr. Loomis received an email and voicemail from "Mark" of Comcast "Executive Customer Relations." The email stated that Mark was his "case manager."

119. Mr. Loomis spoke to Mark, who stated he was located in Texas.

120. Mark, who appeared to have reviewed Mr. Loomis' letter and the enclosed chat transcript of the placement of the order with Surinder, offered to give Mr. Loomis a credit of $192.00, representing a refund of 24 months of $8.00 in monthly Fees.

121. But Mark told Mr. Loomis that despite this credit, Comcast could increase the Broadcast TV Fee or the Regional Sports Fee, or add other fees, *anytime* after the first three months of the two-year contract term.

122. Mr. Loomis asked Mark how could that be since he had an agreement with Comcast for a guaranteed fixed price per month.

123. Mark said the only thing Comcast can guarantee in a 24-month contract is that the "package price" will remain fixed.

124. Mr. Loomis responded to Mark that increasing the Fees after the first 3 months is just a surreptitious way of increasing the guaranteed package price.

125. Mark replied that "all the cable companies do this," and that Comcast's contract permitted it.

126. Mr. Loomis told Mark that he had never seen a contract, and he asked Mark to send him the contract.

127.    Mark sent via postal mail a 24-month Minimum Term Agreement to Mr. Loomis, which Mr. Loomis received on September 21, 2016. (See **Exhibit G.**) Mr. Loomis had never seen the document before.

128.    Mr. Loomis examined the Minimum Term Agreement, and saw that the undefined terms "Broadcast TV Fee" and "Regional Sports Fee" were buried in a sentence combined with taxes and government fees.

129.    On October 23, 2016, Mr. Loomis submitted a complaint to the FCC about: (1) Comcast's practice of charging the Fees in breach of its promises to him; and (2) Comcast's assertion that it could increase the Fees after three months into his two-year contract despite Comcast's having promised him a guaranteed locked-in rate.

130.    In response to this FCC complaint, Mr. Loomis received a call from a Comcast agent named "Robert."

131.    Robert told Mr. Loomis that what Comcast was doing regarding its billing was "legal."

132.    Mr. Loomis informed Robert that he had previously received a $192.00 credit from Comcast representing a refund of 24 months of $8.00 in monthly Fees.

133.    Robert told Mr. Loomis he was "surprised" that Comcast had granted him the credit.

134.    Mr. Loomis told Robert that Mark, the agent who had granted the credit, had told Mr. Loomis that Comcast could increase these Fees – which Mr. Loomis never agreed to in the first place – at any time, and that the $192.00 would not cover these future increases in the Fees. Mr. Loomis asked Robert if Comcast's position was indeed that it could increase the Fees at any time during the contract.

135.    Robert responded that yes, Comcast could increase the Broadcast TV Fee and Regional Sports Fee from time to time even during the 24 month contract, and that Comcast could even add new fees if it so desired.

136.    On November 18, 2016, Mr. Loomis received an email from the FCC that Comcast had provided the FCC with a response and that his complaint was now closed.

137. Mr. Loomis then mailed a second letter of complaint to Comcast. Mr. Loomis stated in the letter that despite granting him the $192.00 credit, Comcast agents had told him that Comcast could increase the Fees in the future at any time. Mr. Loomis wrote that he objected to any future increase in the Fees, and he reminded Comcast that he had not agreed to the Fees in the first place, let alone to their increase in the middle of his fixed-rate contract term.

138. On December 28, 2016, in response to his second letter of complaint, Mr. Loomis received a phone call from another agent named "Ryan." Ryan told Mr. Loomis, as Comcast agents Mark and Robert had told him previously, that Comcast could raise the Broadcast TV Fee and the Regional Sports Fee at any time during the term of the promised fixed-rate contract. Ryan then appeared to threaten Mr. Loomis that if he continued to complain, Comcast could even reverse the $192.00 credit.

139. Mr. Loomis decided not to pursue the matter further at that time.

140. A bit over two months later, Comcast notified Mr. Loomis in his March 10, 2017 bill that Comcast would be increasing the Broadcast TV Fee from $5.00 to $7.00, and the Regional Sports Fee from $3.00 to $5.00, effective July 1, 2017 - approximately half-way into his two-year fixed-rate contract.

141. In sum, Comcast failed to honor its agreements with and representations to Mr. Loomis, and Comcast is charging Mr. Loomis more for his service package than what Comcast promised him. Mr. Loomis materially relied upon Comcast's misrepresentations and omissions, which in conjunction with Comcast's acts and practices alleged herein caused Mr. Loomis to suffer imminent harm, injury in fact, and lost money or property.

## VI.     CLASS ACTION ALLEGATIONS

142. Plaintiff brings this class-action lawsuit on behalf of himself and the members of the proposed Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following Class:

**All persons in California whom Comcast has charged a "Broadcast TV Fee" and/or a "Regional Sports Fee" within the applicable statute of limitations.**

143. Specifically excluded from the Class are Comcast and any entities in which

Comcast has a controlling interest, Comcast's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

144.    ***Numerosity.*** Plaintiff does not know the exact number of Class members but believes that the Class comprises hundreds of thousands of consumers in California. As such, Class members are so numerous that joinder of all members is impracticable.

145.    ***Commonality and predominance.*** Well-defined, nearly identical legal or factual questions affect all Class members. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

a.    Whether Comcast falsely advertised its cable television service packages at flat monthly rates while in fact intending to charge more than promised via a Broadcast TV Fee and/or a Regional Sports Fee;

b.    Whether Comcast's representations to Plaintiff and the Class regarding the monthly price to be charged were objectively material;

c.    Whether Plaintiff and the Class relied on these promised flat monthly rates in contracting with Comcast for services;

d.    Whether Comcast adequately disclosed and described its Broadcast TV Fee and Regional Sports Fee to Plaintiff and the Class;

e.    Whether Comcast's advertising misled consumers into falsely believing that the advertised price for its service packages – which omits the charges for the Broadcast TV Fee and the Regional Sports Fee – is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees;

f.    Whether Comcast had a policy of instructing and/or encouraging its sales agents to mislead consumers into falsely believing that the quoted price for its service packages – which omits the charges for the Broadcast TV Fee and the Regional Sports Fee – is the actual price consumers will pay except for equipment charges and bona fide taxes and government fees;

g.    Whether Comcast had a policy of instructing and/or encouraging its sales and customer service agents to make misleading or false statements to consumers regarding the nature and purpose of the Broadcast TV Fee and the Regional Sports Fee;

h. Whether Comcast's disclaimers in its advertising, Minimum Term Agreements, and/or customer bills were misleading because they falsely imply that the Broadcast TV Fee and the Regional Sports Fee are government-related fees;

i. Whether Comcast's representations and descriptions of the Broadcast TV Fee and the Regional Sports Fee in its customer bills were deceptive;

j. Whether Comcast breached its Subscriber Agreement and/or other agreements with Plaintiff and the Class by charging the Broadcast TV Fee and the Regional Sports Fee;

k. Whether Comcast breached its contractual obligations to Plaintiff and the Class by increasing the Broadcast TV Fee and the Regional Sports Fee in the middle of minimum term fixed-rate customer contracts;

l. Whether Comcast gave adequate notice to Plaintiff and the Class when it increased the amount of the Broadcast TV Fee and the Regional Sports Fee charged to them;

m. Whether Comcast wrongfully took possession of and has since retained monies belonging to Plaintiff and the Class;

n. Whether Comcast acted inconsistently with the reasonable expectations of Plaintiff and the Class;

o. Whether Comcast breached the implied covenant of good faith and fair dealing as to Plaintiff and the Class;

p. Whether Comcast failed to disclose objectively material information to Plaintiff and the Class regarding the true monthly price to be charged for its service plans;

q. Whether Comcast failed to disclose objectively material information to Plaintiff and the Class regarding the Broadcast TV Fee and the Regional Sports Fee;

r. Whether Comcast's representations and omissions had a tendency to deceive consumers;

s. Whether Comcast's Subscriber Agreement and/or Minimum Term Agreements with its customers contain unconscionable terms;

t. Whether Comcast's Subscriber Agreement and/or Minimum Term

Agreements with its customers contain illusory terms;

u.      Whether Comcast was unjustly enriched;

v.      Whether Comcast's conduct alleged herein violated California's consumer protection laws;

w.      Whether Plaintiff and the Class have sustained monetary loss and the proper measure of that loss;

x.      Whether Plaintiff and the Class are entitled to damages and/or restitution; and

y.      Whether Comcast should be enjoined from further engaging in the misconduct alleged herein.

146.     ***Typicality.*** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Comcast's standard practice and scheme of advertising and promising a low, flat monthly rate while instead charging a much higher rate through the use of inadequately disclosed and deceptive Fees.

147.     ***Adequacy.*** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel who has considerable experience and success in prosecuting complex class action and consumer protection cases.

148.     ***Superiority.*** A class action is the superior method for fairly and efficiently adjudicating this controversy for the following reasons without limitation:

a.      Class members' claims are relatively small compared to the burden and expense required to litigate their claims individually, so it would be impracticable for Class members to seek individual redress for Comcast's illegal and deceptive conduct;

b.      Even if Class members could afford individual litigation, the court system could not. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court; and

c.      Plaintiff anticipates no unusual difficulties in managing this class action.

## VII.    COMCAST'S ARBITRATION CLAUSE IS UNENFORCEABLE AGAINST CALIFORNIA CUSTOMERS

149.     Pursuant to the terms in Comcast's Subscriber Agreement and California law, the arbitration clause contained in the Subscriber Agreement is unenforceable against Plaintiff and the Class and their claims *must* be decided by a Court and not in arbitration.

150.     On April 6, 2017, the California Supreme Court unanimously ruled in *McGill v. Citibank, N.A.*, _____ Cal.5th _____ (attached hereto as **Exhibit J**), that a provision in an arbitration agreement which waives the right to seek public injunctive relief "is contrary to California public policy and is thus unenforceable under California law." Slip op. at 1.

151.     More than one year earlier, on March 23, 2016, Comcast had modified the arbitration clause (Section 13 of its Subscriber Agreement, see **Exhibit H**) to state that if the arbitration clause's ban on public injunctive relief is found to be unenforceable, then *the entire arbitration clause will be unenforceable*.

152.     Section 13(j) of the Subscriber Agreement reads as follows (emphasis added):

> **j. Severability and Waiver of Jury Trial.** <u>If any part of Section (h)</u> of this Arbitration Provision <u>is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable and the Dispute will be decided by a court.</u> WHETHER IN COURT OR IN ARBITRATION, YOU AND COMCAST AGREE TO WAIVE THE RIGHT TO A TRIAL BY JURY TO THE FULLEST EXTENT ALLOWED BY LAW. If any other clause in this Arbitration Provision is found to be illegal or unenforceable, that clause will be severed from this Arbitration Provision, and the remainder of this Arbitration Provision will be given full force and effect.

153.     Section 13(h) of the Subscriber Agreement reads as follows (emphasis added):

> **h. Waiver of Class Actions and Collective Relief.** <u>THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED</u> ON A CLASS ACTION, JOINT OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS. THE ARBITRATOR MAY AWARD RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT INDIVIDUAL PARTY'S CLAIM. THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR

CLASS PROCEEDING.

154.    The California Supreme Court's *McGill v. Citibank* decision is currently the ultimate authority on the enforceability of arbitration clause waivers of public injunctive relief under California law.

155.    It is thus irrefutable that under California law, Comcast's arbitration waiver of public injunctive relief - i.e., its waiver in Section 13(h) of "claims brought in a purported representative capacity on behalf of the public (such as a private attorney general)" – is, pursuant to the Supreme Court's decision in *McGill v. Citibank*, "contrary to California public policy and is thus unenforceable under California law."

156.    Given Comcast's clear statement at Section 13(j) that "If any part of Section (h) of this Arbitration Provision is found to be illegal or unenforceable, the entire Arbitration Provision will be unenforceable and the Dispute will be decided by a court," it is irrefutable that because the arbitration clause's ban on public injunctive relief is now unenforceable, the *entire* arbitration clause is unenforceable, including its prohibition of class actions. It is also undeniable that this lawsuit is now subject to trial by jury.

## VIII.    CHOICE OF LAW

157.    The law of California applies.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

158.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

159.    Comcast entered into valid contractual agreements with Plaintiff and all Class members.

160.    The essential terms of Comcast's contracts with Plaintiff and Class members included Comcast's obligation to provide services at the monthly promised rate for the contract's duration.

161.    The essential terms of Comcast's contracts with Plaintiff and Class members included that the promised and quoted price was the actual price they would pay except for equipment charges and bona fide taxes and government-related fees.

162.    Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed under their contracts with Comcast.

163.    Comcast has breached its contracts with Plaintiff and Class members by charging more than it promised via an inadequately and deceptively disclosed Broadcast TV Fee and/or Regional Sports Fee.

164.    Comcast has also breached its contracts with Plaintiff and Class members by increasing the amount of these Fees to effectively raise the monthly service price in the middle of customer contracts despite having promised a lower fixed monthly rate.

165.    Comcast's contractual breaches are ongoing. Absent an order from the Court ordering Comcast to perform as it is required under its contracts with Plaintiff and Class members, Comcast will continue to breach its contracts to the detriment of the Class.

**COUNT II**
**Breach of the Covenant of Good Faith and Fair Dealing**

166.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

167.    A covenant of good faith and fair dealing is implied in every contract, including Comcast's contracts with Plaintiff and Class members.

168.    The material terms of Comcast's contracts with Plaintiff and Class members include Comcast's obligation to provide services at the promised monthly rate for the contract's duration.

169.    Where a contract vests one party with discretion, the duty of good faith and fair dealing applies, and the party exercising the discretion must do so in a manner that satisfies the objectively reasonable expectations of the other party. A party may not perform an agreement in a manner that would frustrate the basic purpose of the agreement and/or deprive the other party of

its rights and benefits under the agreement.

170. It was objectionably reasonable under the circumstances, based on Comcast's misrepresentations and omissions, for Plaintiff and the Class to expect that Comcast's advertised and promised monthly service price was price Comcast would actually charge them for their service.

171. It was objectionably reasonable under the circumstances for Plaintiff and the Class to expect that Comcast would not hide price increases in the form of deceptive and inadequately disclosed charges which Comcast called the Broadcast TV Fee and the Regional Sports Fee.

172. It was objectionably reasonable under the circumstances for Plaintiff and the Class to expect Comcast would not increase its service price via increases in said Fees in the middle of a minimum term contract contrary to its promise to charge a fixed monthly rate.

173. Comcast has abused any and all power it has to impose the prices charged to Plaintiff and the Class. Moreover, Comcast's conduct alleged herein is inconsistent with the reasonable expectations of Plaintiff and the Class, and is inconsistent with what an objectively reasonable consumer would have expected under the circumstances.

174. Comcast has acted in a manner that frustrates a basic purpose of its contracts with Plaintiff and the Class, and has deprived Plaintiff and the Class of benefits and rights that they are entitled to under their contracts with Comcast.

175. Plaintiff and all Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required under their contracts with Comcast.

176. By reason of Comcast's breach of the implied covenant of good faith and fair dealing, Plaintiff and all Class members suffered damages, in an amount to be proven at trial.

177. Comcast's breaches of the implied covenant of good faith and fair dealing are ongoing. Injunctive relief is required to prevent Comcast from further breaching the implied covenant to the detriment of the Class.

**COUNT III**
**Unjust Enrichment**

178.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

179.    Comcast has been knowingly enriched, at the expense of Plaintiff and the Class, as a result of its misconduct alleged herein. Such enrichment includes the substantial revenues that Comcast has received from Plaintiff and the Class for the inadequately disclosed and deceptive Broadcast TV Fees and Regional Sports Fees that Comcast charged them, over and above what Comcast should have charged them.

180.    If Comcast had adequately disclosed the Fees, then Plaintiff and the Class could have evaluated whether to purchase Comcast services based on the amounts that Comcast would really charge them. Instead, Comcast chose to deceive consumers by tricking them into thinking they would pay less, and thus has been unjustly enriched.

181.    Plaintiff's and Class members' detriment, and Comcast's enrichment, are traceable to, and resulted directly and proximately from, the misconduct challenged in this Complaint.

182.    It would be inequitable for, and good conscience militates against permitting, Comcast to retain the amounts that it received as a result of the misconducted alleged herein.

183.    Plaintiff and the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all amounts obtained by Comcast as a result of its misconduct alleged herein.

**COUNT IV**
**Violations of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq.***

184.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

185.    Comcast's practices, misrepresentations, and omissions alleged herein constitute unlawful, unfair, or fraudulent business practices in violation of California Business and

Professions Code § 17200 *et seq*.

186. The misrepresentations and omissions by Comcast alleged herein were the type of representations and omissions that are regularly considered to be material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

187. Plaintiff and each of the Class members reasonably relied upon Comcast's material misrepresentations and omissions in purchasing their service contracts.

188. As a result of the foregoing, Plaintiff and each Class member have been injured and have lost money or property and are entitled to restitution and injunctive relief.

189. Unless restrained by this Court, Comcast will continue to engage in unfair, deceptive, and unlawful conduct, as alleged above, in violation of California Business and Professions Code § 17200 *et. seq*.

## <u>COUNT V</u>
### <u>Violations of California Business and Professions Code § 17500 *et seq.* ("FAL")</u>

190. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

191. Comcast has committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 ("False Advertising Law" or "FAL"), by engaging in the acts and practices described herein with the intent to induce consumers to purchase its service plans.

192. Comcast's misrepresentations and omissions deceive or have a tendency to deceive the general public.

193. The misrepresentations and omissions by Comcast alleged herein were the type of representations and omissions that are regularly considered to be material, i.e, a reasonable person would attached importance to them and would be induced to act on the information in making purchase decisions.

194. Plaintiff and each of the Class members reasonably relied on Comcast's false advertising in purchasing their service contracts.

195.    As a result of the foregoing, Plaintiff and the members of the Class have been injured and have lost money or property and are entitled to restitution and injunctive relief.

196.    Unless restrained by this Court, Comcast will continue to engage in untrue and misleading advertising, as alleged above, in violation of California Business and Professions Code § 17500 *et seq.*

**COUNT VI**
**Violations of California's Consumer Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq.***

197.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

198.    Comcast is a "person," as defined by California Civil Code § 1761(c).

199.    Plaintiff, and each of the Class members, are "consumers," as defined by California Civil Code § 1761(d).

200.    The service plans marketed and sold by Comcast constitute "goods" and "services" as defined by California Civil Code § 1761(a) and (b).

201.    Plaintiff's and the Class members' purchases of Comcast's services constitute "transactions," as defined by California Civil Code § 1761(e).

202.    Venue is proper under California Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this county. Plaintiff's declaration establishing that this Court has proper venue for this action is attached hereto as **Exhibit I**.

203.    Comcast intentionally misled consumers to believe it would charge consumers an advertised and promised flat monthly rate for television programming, but in fact Comcast charged a much higher rate via an inadequately disclosed and deceptive Broadcast TV Fee and Regional Sports Fee. Comcast intentionally deceived consumers by hiding and disguising said Fees in its advertising, contracts, and customer bills, and by falsely implying and/or stating that the Fees were government-related charges.

204.    Comcast's misrepresentations, active concealment, and failures to disclose violated the CLRA in ways including, but not limited to, the following:

    a.    Comcast misrepresented that its service plans had characteristics, benefits,

or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

        b.      Comcast advertised its services with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

        c.      Comcast made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code § 1770(a)(13));

        d.      Comcast misrepresented that its service plans conferred rights, remedies or obligations that they did not have (Cal. Civ. Code § 1770(a)(14));

        e.      Comcast misrepresented that its service plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

        f.      Comcast inserted unconscionable provisions in its customer contracts (Cal. Civ. Code § 1770(a)(19)).

     205.    Comcast's misrepresentations and nondisclosures regarding its service plans were material to Plaintiff and members of the Class because a reasonable person would have considered them important in deciding whether to purchase Comcast's service plans, and because Comcast had a duty to disclose the truth.

     206.    Plaintiff and the Class members reasonably relied upon Comcast's material misrepresentations and nondisclosures, and had they known the truth, they would have acted differently.

     207.    As a direct and proximate result of Comcast's material misrepresentations and nondisclosures, Plaintiff and the Class members have suffered monetary damages and been irreparably harmed.

     208.    On behalf of the Class, Plaintiff seeks injunctive relief in the form of an order enjoining Comcast from making such material misrepresentations and omissions, and to cease charging the Fees to customers who are currently under Minimum Term Agreement contracts which were procured via said material misrepresentations and omissions.

## COUNT VII
## Injunctive Relief

     209.    Plaintiff realleges and incorporates by reference every allegation set forth in the

CLASS ACTION COMPLAINT
Case No. 3:17-cv-02110

preceding paragraphs as though alleged in this Count.

210. If not enjoined by order of this Court, Comcast will continue to injure Plaintiff and the Class through the misconduct alleged herein.

211. Plaintiff seeks the following injunctive relief: (1) that Comcast be enjoined from advertising and promising a price for its services that does not include the applicable amounts currently described by Comcast as the Broadcast TV Fee and the Regional Sports Fee; (2) that Comcast be required to include all charges it imposes to reimburse itself for its contractual payments to the broadcast television stations and local sports channels in its advertised, promised, and stated price for its services, including in the top-line price for the service plans in its advertising and on its customer bills; (4) that Comcast be enjoined from falsely characterizing or implying that the Broadcast TV Fee and the Regional Sports Fee are taxes or government-related fees; and (5) that Comcast be enjoined from charging the Broadcast TV Fee and the Regional Sports Fee to customers who are currently under Minimum Term Agreement contracts which were procured via the misconduct alleged in this Complaint.

212. Plaintiff and the Class will be irreparably injured if Comcast continues in its present course of conduct.

213. Pecuniary compensation will not afford adequate relief.

214. The balance of the equities favors this Court's issuance of the relief requested by Plaintiff.

215. The public interest and public policy favor this Court's issuance of the relief requested by Plaintiff.

## COUNT VIII
### Declaratory Relief

216. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

217. Plaintiff is a person interested under the California Declaratory Judgment Act (California Code of Civil Procedure § 1060 et seq.), and, as such, desires a declaration of his

rights or duties with respect to another, or in respect to property in this actual controversy relating to the legal rights and duties of the respective parties.

218.    Plaintiff and the Class do not have a plain, speedy and/or adequate remedy in the ordinary course of law.

219.    Plaintiff and the Class are entitled to the relief demanded, and the relief, or any part thereof, consists in declaratory relief to restrain the commission or continuance of the acts complained of.

220.    For example, and without limitation, Plaintiff and the Class are entitled to the following declaratory relief: (1) a finding that Comcast has engaged in unfair, unlawful, and/or fraudulent business acts or practices in violation of California law; (2) that Comcast stop advertising and promising a price for its services that does not include the applicable amounts currently described by Comcast as the Broadcast TV Fee and the Regional Sports Fee; (3) that Comcast include all charges it imposes to reimburse itself for its contractual payments to the broadcast television stations and local sports channels in its advertised, promised, and stated price for its services, including in the top-line price for the service plans in its advertising and on its customer bills; (4) that Comcast stop falsely characterizing or implying that the Broadcast TV Fee and Regional Sports Fee are taxes or government-related fees; and (5) that Comcast cease charging the Broadcast TV Fee and Regional Sports Fee to customers who are currently under Minimum Term Agreement contracts which were procured via the misconduct alleged in this Complaint.

221.    Plaintiff and the Class will be irreparably injured if Comcast continues in its present course of conduct.

222.    Pecuniary compensation will not afford adequate relief.

223.    The balance of the equities favors this Court's issuance of the relief requested by Plaintiff.

224.    The public interest and public policy favor this Court's issuance of the relief requested by Plaintiff.

## **PRAYER FOR RELIEF**

On behalf of himself and the Class, Plaintiff requests that the Court order relief and enter judgment against Comcast as follows:

1.   An order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

2.   An order that Comcast is permanently enjoined from its misconduct as alleged herein;

3.   An order that Comcast cease charging the Fees to customers who are currently under Minimum Term Agreement contracts which were procured via the misconduct alleged herein;

4.   A judgment awarding Plaintiff and Class members restitution, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Comcast obtained as a result of its misconduct as alleged;

5.   A judgment awarding Plaintiff and Class members actual damages;

6.   A judgment awarding Plaintiff and Class members punitive, exemplary and/or treble damages;

7.   Pre-judgment and post-judgment interest;

8.   Attorneys' fees, expenses, and the costs of this action; and

9.   All other and further relief as this Court deems necessary, just and proper.


## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

1    Dated:  April 14, 2017          Respectfully submitted,

2                                    By:  _Daniel M. Hattis_____
3                                         Daniel M. Hattis

4                                    Daniel M. Hattis (SBN 232141)
                                     HATTIS LAW
5                                    P.O. Box 1645
                                     Bellevue, WA 98009
6                                    Telephone: (650) 980-1990
7                                    Facsimile: (425) 412-7171
                                     Email: dan@hattislaw.com
8
                                     Jason Skaggs (SBN 202190)
9                                    SKAGGS FAUCETTE LLP
                                     430 Lytton Ave 2nd FL
10                                   Palo Alto, CA 94301
                                     Telephone: (650) 617-3226
11                                   Email: jason@skaggsfaucette.com
12
                                     Tony J. Tanke (SBN 74054)
13                                   LAW OFFICES OF TONY J. TANKE
                                     2050 Lyndell Terrace, Suite 240
14                                   Davis, CA 95616
                                     Telephone: (530) 758-4530
15                                   Email: appeals@tankelaw.com
16
                                     Attorneys for Plaintiff and the Proposed Class
17

18

19

20

21

22

23

24

25

26

27

28

- 40 -                              CLASS ACTION COMPLAINT
                                    Case No. 3:17-cv-02110